UNITED COPPER MINING and SMELTING COMPANY

*vs.*

LUTHER FRANKS.

SAME, in equity, *vs.* SAME.

Hancock.     Opinion February 23, 1893.

*Tax. Sale. Notice. Trespass. Possession. · R. S., c. 6, §§ 188, 205.*
*Stat. 1826, c. 337, § 8.*

To effect a valid sale of land of non-residents for taxes assessed thereon, there must be a punctilious compliance with the statute provisions preparatory to, as well as those governing, the sale. *Held;* that a tax title is void for irregularity where the lists, required by R. S., c 6, § 188, to be published three weeks successively within three months after the collector's return, were not so published. In this case the return was made February 25, 1890; the three weeks publication should have been completed on or before May 25, 1890; but it was first published May 22, and the last on June 5, 1890; and the court orders the deposit made by plaintiff pursuant to R. S., c. 6, § 205, to be returned to him.

A deed without a seal conveys no title.

Of the possession insufficient to maintain trespass against one not a mere stranger but claiming title.

*Dunn* v. *Snell*, 74 Maine, 28, followed.

ON REPORT.

These cases are stated in the opinion.

*Hale and Hamlin*, for plaintiff.
*Wiswell and King*, for defendant.

VIRGIN, J.  An action of trespass *quare clausum* and a bill in equity under which the defendant was enjoined from committing any further acts of alleged trespass upon the premises during the pendency of law.

The principal question is one of title. The plaintiff, organized in February, 1888, negotiated for the purchase of the plants of the three mining corporations known as the Bluehill, Stewart,

and the Douglass, situated in the town of Bluehill. Having obtained deeds of the several properties, the plaintiff, in March or April, 1888, commenced active operations thereon, principally working the Douglass, but using the machinery and implements of the others at will. The work was prosecuted by a gang of twenty to thirty men, until April or May, when it was suspended and has never been resumed.

In January, 1892, the defendant under the directions of one McLaughlin, entered the premises with men and teams and began to remove the engines, boilers and other valuable machinery and fixtures, with the intention of transporting them to Massachusetts. After much of the property had been severed and removed, viz: on February 11, 1892, the defendant was arrested on this writ of trespass, but he gave the bond required to procure his release and immediately thereupon resumed the severance and removal of the property as before. As the defendant, after three successive writs had been served upon him still persisted in divesting the buildings of their contents, the plaintiff, on February 20, 1892, caused him to be enjoined.

The title of McLaughlin,—under whom the defendant acted,—rests solely upon a sale of the property as owned by non-residents, for taxes assessed thereon in Bluehill for the municipal year 1889.

To effect a valid sale of land of non-residents for taxes assessed thereon, there must be a punctilious compliance with the several statutory provisions preparatory to, as well as those governing the sale. *Brown* v. *Veazie*, 25 Maine, 362; *Matthews* v. *Light*, 32 Maine, 305. Passing by several omissions which would seem to render the sale, at least, questionable, we come to one which we think renders the sale fatally defective. By R. S., c. 6, § 188, certain lists are required to be returned by the collector to the treasurer, "the lists so returned the treasurer shall cause to be published in some newspaper, if any, published in the county where such real estate lies, three weeks successively; if no such paper is published in such county, said lists shall be published in like manner in the state paper; and in either case such publication shall be within three months after the date of the collector's return."

What does the phrase, "such publication," mean? Obviously the act of publishing "three weeks successively." It is an undivided, unbroken, whole thing,— viz: a notice of three weeks' duration. It is no notice unless it is continued during the time mentioned and completed within the period specified,— "three months after the date of the collector's return." The whole notice and not a part of it is what must be seasonably given before the treasurer can sell the land of a non-resident for taxes.

This construction is substantially settled in *Bussey* v. *Leavitt*, 12 Maine, 378. Statute of 1826, c. 337, § 8, then under consideration, provided that "the notice of sale required to be published in the public newspapers three weeks successively, shall be so published three weeks prior to the time of sale." The court said: "We understand the provision to mean that, the notice, by advertising three weeks successively, shall be completed three months prior to the sale." The only difference is, that, in the case at bar, the notice is required to be published three weeks successively *after* a certain date, and the act of 1826, three weeks successively *prior*.

So in New Hampshire, where the statute required the sale to be advertised by "publication for three successive weeks, at least six weeks before sale," the court held that, "the last publication shall be at least six weeks before the sale." *Mowry* v. *Blandin*, 64 N. H. 3.

Application. The collector's return was made on February 25, 1890. The three weeks' publication should have been completed "within three months" after that date,— on or before May 25, 1890; but it was first published on May 22, and last on June 5, 1890. McLaughlin, therefore, at the time of the alleged trespass, had no legal title to any of the property of the three mining corporations named.

The plaintiff's title to the Stewart property is not sound. One link in its chain of title is derived from one Laughton who recovered a judgment against that corporation, at the January term, 1887, in Penobscot county. On the execution issued on such judgment, the sheriff sold the debtor's property at auction, to the creditor who was the highest bidder, and undertook to con-

vey it by deed of April 9, 1887. But the deed conveyed no title for it was not a sealed instrument. *McLaughlin* v. *Randall*, 66 Maine, 226.

Did the plaintiff have such a possession of the Stewart property as would entitle it to maintain trespass against the defendant, who was not a mere stranger and wrongdoer, but claimed title to the property under a tax deed for which he had paid seven hundred dollars cash?

As seen, the plaintiff had purchased in (as it supposed,) all the outstanding record title, and claims, and had worked the property for one year, when its operations ceased. One Dunn had been its manager and superintendent, at least, during the operation. He retained the keys thereafter; but the locks were taken off, some of the windows broken, the buildings became out of repair, the roofs leaky so that the storms had reached and rusted some of the valuable machinery, some of the less valuable of which with sundry tools and implements had been carried away. In fine, the whole property inside and outside seems to have had the appearance of gross neglect and final abandonment to the tax gatherer, who had sold it at auction a year or two before.

Dunn did not seem to consider himself as the plaintiff's agent in charge of its property during any portion of the seven weeks while the defendant was severing the engines, boilers and other heavy machinery, and taking down sides of buildings necessary for their removal. For while he was a witness to these proceedings he made no complaint or protest. To be sure, the plaintiff's directors, on April 21, 1892, formally voted that he was its local agent and had been such ever since the company's ownership though no formal recorded vote to that effect, was in existence, but "recognized, approved and adopted Dunn's acts as those of the corporation, and his possession that of the corporation." The difficulty is he had performed no acts indicating that he was in possession for the purpose of caring for the property; but he seemed to look upon what was going on as the acts of one whose principal had purchased the property, at a tax sale, for seven hundred dollars, and that it was a matter which did

not concern the plaintiff. We are of opinion, therefore, that so far as the Stewart property is concerned, the action at law cannot be maintained.

On recurring to the declaration, it is found that the only trespass sued for is that committed upon the Douglass and Stewart properties which were adjoining. The action is trespass *quare clausum*, and the gist is the breaking and entering. *Sawyer* v. *Goodwin*, 34 Maine, 419. The defendant is responsible for such breaking and for all other injuries done to the property real or personal, known as the Douglass, after such breaking.

The bill covers all three of the properties and must be sustained as to the Douglass and Bluehill, the plaintiff's title to which is not questioned. The injunction to be made permanent as to both of them, with costs.

If the Bluehill property was injured, no damages can be recovered therefor in this action, for none are claimed in the declaration.

The plaintiff is, therefore, entitled to judgment as above indicated, damages to be assessed at *nisi prius* as stipulated in the report.

The deposit made by the plaintiff pursuant to R. S., c. 6, § 205, should be returned to him. *Dunn* v. *Snell*, 74 Maine, 28.                                        *Judgment for plaintiff.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.